IRVING, J,
for the Court.
¶ 1. Odell Prince pled guilty to sale of cocaine and was sentenced to twenty years in the custody of the Mississippi Department of Corrections by the Kemper County Circuit Court. Thereafter, Prince filed a motion for post-conviction relief, alleging that his guilty plea was involuntary and that his attorney misled him. Finding no merit to the petition, the court denied post-conviction relief. Prince now appeals, alleging that his plea should be set aside for three reasons: because his plea was not voluntarily and knowingly entered, because the court erred in allowing him to plead guilty to sale of cocaine rather than conspiracy to sell cocaine, and because his attorney was constitutionally ineffective.
¶ 2. Finding no merit to these allegations, we affirm.
FACTS
¶3. Prince was charged with sale of cocaine and conspiracy to sell cocaine after another individual, Nathan Rush, sold co-' caine to an undercover police officer. Prince apparently had been contacted by the officer, who told him that she wanted to purchase cocaine. Prince did not want to sell the cocaine to the officer, but he told Rush about the proposed sale, and Rush indicated that he would be willing to sell the cocaine. Thereafter, Prince procured the cocaine and gave it to Rush. *71 During his plea colloquy, Prince claimed that he told Rush not to sell the cocaine, but essentially admitted that he gave the cocaine to Rush with the knowledge that Rush intended to sell the cocaine. Prince had no other explanation for why he gave the cocaine to Rush.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Voluntariness of Plea

¶ 4. In his first contention of error, Prince claims that his plea was not knowingly and voluntarily entered. If Prince’s guilty plea was not entered knowingly and voluntarily, then it is not binding on him. Spry v. State, 796 So.2d 229, 231(¶ 6) (Miss.2001). In order for a plea to be voluntary, “[a] defendant must be advised concerning the nature of the charge against her and the consequences of her plea including the minimum and maximum sentences that may be imposed.” Hannah v. State, 943 So.2d 20, 25(¶ 12) (Miss.2006) (citing Alexander v. State, 605 So.2d 1170, 1172 (Miss.1992)). A defendant must also be informed of the constitutional rights that a guilty plea waives. Id. When reviewing the petitioner’s plea colloquy, there is a “strong presumption of validity” attached to the statements made therein. See id. at 25(¶ 11) (Miss.2006) (citing Baker v. State, 358 So.2d 401, 403 (Miss.1978)). The burden is on Prince to show that his guilty plea was not voluntarily entered. Id.
¶ 5. A review of the record reveals that Prince was informed of the nature of the charges against him, and that he was informed of the possible minimum and maximum sentences that might have been imposed. Furthermore, it is clear that Prince was informed of the constitutional rights that he was waiving by pleading guilty. During his plea colloquy, Prince described his role in the cocaine sale. Although he equivocated, after a lengthy plea colloquy, Prince indicated that he wished to plead guilty to the sale of cocaine charge.
¶ 6. Prince points out that he cannot read or write, and that his attorney was aware of that fact. However, the transcript reveals that the court was also aware of this fact, as Prince admitted to the court that he could not read or write. Prince indicated that his attorney had read his guilty plea petition to him, and that he understood it as it was read to him.
¶ 7. Prince also claims that his plea was not voluntary because both the prosecutor and his attorney told him “that he would receive a(20) twenty year sentence with parole.” Nothing in the record supports Prince’s contention that the district attorney’s office told him he would be eligible for parole. Prince maintained at the hearing that his attorney had told him that he would be eligible for parole, but the court went to great lengths to make sure that Prince understood that, due to his habitual offender status, he would not be eligible for parole. It was only after being informed of this by the court that Prince pleaded guilty. Therefore, even if his attorney had informed him that he would be parole eligible, Prince could not have still harbored any illusions about parole eligibility when he pled guilty. Therefore, any misinformation that Prince may have received regarding whether he was eligible for parole did not impact the voluntariness of his guilty plea.
¶ 8. In his brief, Prince also contends that his attorney advised him to lie to the court: “Appellant alleges his attorney ad-viced [sic] him to tell the court that the plea has not been induced by promises or leniency, (when in fact it has).... ” Prince never specifies what he had been promised in return for pleading guilty. The only *72 potential “leniency” raised by Prince in reference to his guilty plea is his averment that he was told he was parole eligible, a contention that we have already discussed. Any other inducement has not been disclosed by Prince. Furthermore, as he recognizes, Prince’s responses during the plea colloquy belie any allegation that his plea was the product of unfulfilled promises or some other inducement.
¶ 9. Prince argues in another portion of his brief that he was frightened into pleading guilty by statements made by the prosecutor during the guilty plea hearing. Specifically, Prince points to the fact that the prosecutor said that if he went to trial and were found guilty, he would serve his sentence “for the rest of his life until he closes his eyes in death.” However, nothing in the record indicates that Prince was frightened or upset by this statement. This Court finds it unlikely that Prince would have been so swayed by a single remark made in passing, especially since nothing other than Prince’s bare assertion in his appeal brief supports this contention.
¶ 10. Prince argues that he told the court more than once that he “lacked the full understanding of the consequences of his guilty plea.” We note that Prince did equivocate throughout the plea colloquy. However, taken as a whole, Prince appears to have understood the consequences of his guilty plea. The court was quite open about its intention to sentence Prince exactly according to the terms of the State’s plea bargain. Before choosing to enter a guilty plea, Prince knew that he would be sentenced to serve twenty years, and that he would be required to pay a variety of fines and court costs. Prince knew that it was possible that he would serve every day of his twenty-year sentence. Furthermore, Prince knew that he would be facing a mandatory life sentence if he was found guilty at trial. The court clearly explained to Prince why he was guilty of the sale of cocaine even though he did not actually sell the cocaine to the officer, an issue raised by Prince that will be discussed further below. Despite Prince’s occasional expressions of doubt or confusion, the colloquy reveals that he understood the consequences of his guilty plea, and that he carefully weighed those consequences before pleading guilty.
¶ 11. As support, Prince cites Baker v. State, 358 So.2d 401 (Miss.1978) for the proposition that there is no per se rule prohibiting collateral attack on a conviction rising from a guilty plea. While this is a correct statement of the Baker holding, Baker also noted that “we must severely limit the circumstance under which an apparently correct plea may be attacked.” Id. at 403. Clearly, Prince is being allowed his collateral attack on his conviction. Baker is of no help to him.
¶ 12. Prince also claims that he should have at least been entitled to an evidentia-ry hearing, and cites Dunn v. Reed, 309 So.2d 516 (Miss.1975) as support. However, in Dunn, the case was remanded because the circuit court had improperly dismissed for lack of jurisdiction. Id. at 517-18. Without discussing any details of Dunn’s allegations, the Mississippi Supreme Court noted that his allegations, if true, were sufficient to “require the issuance of the writ.” Id. at 517. The court then remanded the case for an evidentiary hearing. Id. at 518.
¶ 13. If there is no genuine issue of material fact, a court is not required to conduct an evidentiary hearing. Miss. Code Ann. § 99-39-19 (Rev.2000). The motion may be dismissed by the trial court when “it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the mov-ant is not entitled to any relief.” Id. The *73 record here shows no genuine issue of material fact regarding Prince’s claims. Therefore, no evidentiary hearing was required.

2. Dismissal of the Conspiracy Charge

¶ 14. In this claim of error, Prince contends that the court erred in dismissing the conspiracy charge against him and in allowing him to plead guilty to sale of cocaine. Prince essentially claims that the facts he described do not constitute a sale of cocaine.
¶ 15. While it is true that Prince did not physically sell the drugs to the officer, he gave drugs to Rush knowing that Rush would sell the drugs to the officer. Prince’s recitation of events also indicates that Rush would not have known that anyone wanted to buy the cocaine without Prince’s intervention. The Mississippi Supreme Court has said that “to aid and abet in the commission of a felony, one must ‘do something that will incite, encourage, or assist the actual perpetrator in the commission of the crime.’ ” Jordan v. State, 918 So.2d 636, 649(¶ 25) (Miss.2005) (quoting Crawford v. State, 133 Miss. 147, 151, 97 So. 534 (1923)). Clearly, Prince encouraged or assisted Rush in the commission of the actual crime. Therefore, Prince could be held accountable as a principal for the sale of the cocaine. See id.
¶ 16. Prince also maintains that the district attorney’s office told him that it would only prosecute him for the conspiracy to sell the cocaine, not for the actual sale. Prince contends that, because of this, the State did not honor its plea bargain. We note that Prince never brought this up during the plea colloquy, despite being given ample opportunity to do so by the court. The court specifically informed Prince, more than once, that he was pleading guilty to the sale of cocaine. Furthermore, Prince agreed that his deal included the dismissal of the conspiracy charge in exchange for Prince’s plea of guilty to the sale of cocaine chai-ge. This contention is clearly without merit.

3. Ineffective Assistance of Counsel

¶ 17. There are two prongs that a defendant must meet in order to show that his counsel was constitutionally ineffective: first, the counsel’s performance must have been deficient, and second, the deficiency must have prejudiced the defendant’s case. Harrell v. State, 947 So.2d 309, 313(¶ 10) (Miss.2007).
¶ 18. Prince alleges that his attorney was ineffective for advising him that he was eligible for parole. Even if we were to accept that Prince has shown that his attorney advised him of this, Prince is wholly unable to meet the second prong of the above test, that this alleged deficiency prejudiced his defense. Any deficiency was corrected by the court, which made sure that Prince understood that he was not, in fact, eligible for parole. When he entered his guilty plea, Prince knew that he was not parole eligible. Therefore, any advice to the contrai-y from his attorney could not have prejudiced his case.
¶ 19. Prince also states that “his attorney told him to lie to the court, and tell the court that the guilty plea has not been induced by promises of leniency when in fact it has.” Prince again points to no alleged promise other than parole eligibility. As we have already found, this contention is wholly without merit.
¶ 20. Prince again asks for an eviden-tiary hearing to determine whether his counsel was ineffective. Since there is no genuine issue as to the effectiveness of his counsel, an evidentiary hearing is not necessary.
¶ 21. THE JUDGMENT OF THE KEMPER COUNTY CIRCUIT COURT *74 DENYING POST-CONVICTION COLLATERAL RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO KEMPER COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR. ROBERTS, J., NOT PARTICIPATING.